Filed 5/16/25  P. v. Looney CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100249 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F02094) |
| v. | |
| EMANUEL LEE LOONEY, | |
| Defendant and Appellant. | |

Defendant Emmanuel Lee Looney was convicted in 2016 of first and second degree robbery, unlawful driving and taking of a vehicle, and fleeing a pursuing patrol vehicle; he was sentenced to 24 years and four months in prison, including two years for prior prison term enhancements.  (Pen. Code, § 667.5, subd. (b);[1] see also *People v.*

---

[1] Undesignated statutory references are to the Penal Code.

1

*Looney* (May 30, 2017, C083079 [nonpub. opn.] (*Looney*).)  Defendant appeals from a December 2023 order after resentencing pursuant to section 1172.75.  He contends the trial court abused its discretion in declining to strike a five-year prior serious felony conviction enhancement.  (§ 667, subd. (a).)  We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts of defendant's crime as described in this court's opinion in defendant's original appeal.  (*Looney, supra*, C083079.)  One evening in April 2013, R.C. and P.K.[2] were working together in a convenience store and gas station when a man wearing a pink hooded sweatshirt came in, told P.K. to give him a cigarette and then became angry, took out a gun and pointed it at R.C., told her to open the register, took about $300, and left.  The next night K.K. and H.S. were working at a mini mart when a man wearing a pink hoodie came in, bought some items, and after paying for them, pulled out a gun and pointed it at H.S., ordered him to open the register, and then reached in and took some cash.  A short time later, L.C. and his girlfriend were getting ready for bed when they heard knocking on the window and  then pounding on the door, which was suddenly kicked open.  A man in a pink hoodie came in, pointed a gun at L.C., demanded his car keys, and left with the keys.

A deputy sheriff responding to a report of the robbery at the mini mart received information about the home invasion and car theft a block away, obtained a description of the suspect and the victim's car, saw defendant driving the car, and chased defendant at high speed until he drove into a retaining wall.  Defendant got out of the car and ran but was eventually apprehended.  A replica handgun was found in the car, along with money, items like those purchased at the mini-mart, and a bag from the mini-mart.  Both K.K.

---

[2] We refer to the victims by their initials to protect their privacy.  (Cal. Rules of Court, rule 8.90(b)(4).)

and L.C. identified defendant in a field showup. A fingerprint lifted from a counter in the convenience store matched defendant's fingerprint. (*Looney, supra*, C083079.)

In 2016, a jury found defendant guilty of first and second degree robbery (§ 211; counts one through five), unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a); count six), and fleeing a pursuing patrol vehicle (Veh. Code, § 2800.2, subd. (a); count seven). Based on a 2003 robbery conviction, the jury also found defendant had a prior serious felony conviction (§ 667, subd. (a)) and a prior strike (§§ 667, subds. (b)-(i), 1170.12). In addition, the jury found true two prior prison term enhancements (former § 667.5, subd. (b)), based on prison sentences defendant served for a conviction in 2008 for unlawful driving or taking vehicle and receiving a stolen motor vehicle (Veh. Code, § 10851, subd. (a); § 496, subd. (a)), and in 2009 for prisoner escape with force (§ 4530).

In September 2016, the trial court sentenced defendant to state prison for four years (doubled to eight years due to the prior strike) on count five, consecutive to one year (doubled to two years) on each of counts one, two, three, and four. The court stayed the sentence on count six (§ 654) and imposed a consecutive sentence of 16 months (eight months doubled) on count seven. The court also imposed a five-year term under section 667, subdivision (a) for the prior serious felony conviction and two years for the two prior prison terms under former section 667.5, subdivision (b), for an aggregate sentence of 24 years four months in prison.

On appeal, this court affirmed the judgment. (*Looney, supra*, C083079.)

The trial court subsequently received notice from the California Department of Corrections and Rehabilitation (CDCR) that defendant was eligible for resentencing under section 1172.75. In August 2023, the court appointed counsel and requested briefing.

In October 2023, defendant filed a brief asking the trial court to dismiss the prior prison enhancements, strike the five-year prior serious felony enhancement, order punishment for counts one or two and counts three or four stayed (or, alternatively, to run the sentences on counts one and two and counts three and four concurrent to each other), and strike the prior strike conviction.  Defendant argued the five-year prior serious felony enhancement should be dismissed based on four factors enumerated in section 1385, subdivision (c)(3):  (1) the enhancement resulted in a sentence longer than 20 years (§ 1385(c)(3)(C)); (2) the enhancement was based on a conviction more than five years old (§ 1385(c)(3)(H)); (3) defendant used a pellet gun, not a real gun (§ 1385, subd. (c)(3)(I)); and (4) the current offenses were connected to defendant's mental illness (§ 1385, subd. (c)(3)(D)).  Lastly, defendant argued he had made impressive progress in prison over the last five years, as evidenced by CDCR mental health records, conversations with his family members, and a long stretch of being discipline free.  Defendant maintained that these mitigating factors weighed greatly in favor of dismissal of the five-year prior serious felony enhancement.

In November 2023, the People filed a brief conceding the trial court should strike the prior prison term enhancements and associated one-year sentences.  The People argued, however, that the facts of the current offenses and defendant's numerous prior convictions did not show that dismissing the five-year prior serious felony enhancement would serve the interests of justice or public safety.  The People urged the court to impose the previous sentence, less two years for the prison priors, for a total sentence of 22 years four months in prison.

In December 2023, defendant filed a reply distinguishing the cases cited in the People's brief regarding the serious felony enhancement.  The People then filed a supplemental brief arguing that defendant's conduct in prison demonstrated that he would be a danger to public safety if released, attaching reports of defendant's conduct in prison, which the People contended showed that defendant was a violent offender who

4

repeatedly violates prison rules. Defendant responded with a supplemental brief contending that defendant's prison behavior did not support a finding that dismissal of his five-year prior serious felony conviction would endanger public safety. He pointed out that he was originally housed in maximum security prisons but was recently transferred to a medium security facility; the rules violation reports the People attached to their brief showed no rules violations for the last two-and-a-half years and only one assault incident between 2017 and 2021.

At the sentencing hearing in December 2023, defense counsel conceded the trial court was not obligated to dismiss the five-year prior if dismissal would cause substantial danger to the public. But counsel argued that defendant had identified five mitigating circumstances and his record from 2017 to 2023 with "what appears to be a one-punch assault in 2021 is more than significant progress."

Addressing defendant's postconviction conduct, the prosecutor argued defendant had "far too many rule violation reports," where institutional rules are of paramount concern. The prosecutor maintained the trial court should not have confidence that defendant would follow rules in society if he would not follow them in prison. The prosecutor conceded that defense counsel was correct about the punch but pointed out the punch was violent behavior and was defendant's most recent rule violation.

The trial court struck the prior prison term enhancements but denied defendant's *Romero*[3] motion in light of the nature of the current offense--three separate robberies in two days (one a home invasion with a gun that appeared real and contributed to the victim's fear)--and considering defendant's other felony convictions and postconviction behavior.

---

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

Turning to defendant's request to dismiss the prior serious felony enhancement, the trial court found that dismissal would endanger public safety. The court found that two mitigating factors under section 1385, subdivision (c) applied: (1) the enhancement resulted in a sentence over 20 years and (2) the prior conviction was over five years old. The court disagreed that defendant's use of a pellet gun was a mitigating factor because this factor refers to an actual firearm that is unloaded or inoperable, and defendant did not use an actual firearm. Based on a review of documentation provided by the defense, the court concluded that defendant suffered from a mental health disorder but this condition did not contribute to the crime. The court was not persuaded that defendant's poor planning (wearing distinctive clothing and no mask) indicated he suffered from a mental health disorder, since many crimes are poorly planned. Rather, the court found the robberies to be "very deliberate and intentional and thought out, at least to some extent," noting that defendant armed himself with a realistic-looking weapon and stole a car after the second robbery to flee officers and avoid capture.

Lastly, the trial court addressed defendant's argument that he had remained free from discipline for the last few years. The court observed that the most recent violation was for violence upon another inmate, and there were a number of rule violations for violence to both inmates and staff, as well as failing to comply with orders. The court noted that in November 2017 medical staff documented that defendant was involved in violent acts towards staff members, which indicated to the court that defendant still has "issues with violence" and "a criminal mindset."

The trial court agreed that defendant had changed and made progress and encouraged defendant to "keep moving forward in the way you are moving forward, because you are doing a good job." Based on recent evidence, however, the court found that imposing a lesser sentence would endanger public safety. Moreover, weighing aggravating and mitigating factors, and giving the mitigating factors great weight, the

court found that mitigating factors were "substantially outweighed by the postconviction behavior that is very aggravating in nature."

The trial court sentenced defendant to the original sentence, less two years for the stricken prior prison term enhancements, for a total sentence of 22 years four months in prison. In pronouncing sentence, the court rejected defendant's section 654 arguments and requests for concurrent sentences. Defendant timely appealed.

DISCUSSION

I

*Legal Background*

Section 1172.75, effective in 2022, generally invalidates sentence enhancements imposed under former section 667.5, subdivision (b) with some exceptions not relevant here. When presented with a person eligible for relief, a trial court shall "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) The statute requires the court to apply the sentencing rules of the Judicial Council, as well as any other changes in law that reduce sentences or increase judicial discretion. (§ 1172.75, subd. (d)(2); see also *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 [Section 1172.75 "requires a full resentencing, not merely that the trial court strike the newly 'invalid' [prior prison term] enhancements"].)

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to add subdivision (c), which requires a trial court to dismiss an enhancement "if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1); Stats. 2021, ch. 721, § 1.) In exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the

7

enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) Statutory mitigating circumstances include where application of an enhancement would result in a sentence over 20 years,[4] the current offense is connected to mental illness, the enhancement is based on a prior conviction over five years old, and the firearm used in the current offense was inoperable or unloaded. (§ 1385, subds. (c)(2)(B), (c)(2)(D), (c)(2)(H), (c)(2)(I).) "[I]f the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances." (*Mendoza, supra*, 88 Cal.App.5th at p. 296.)

We review a trial court's denial of a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490; *Mendoza, supra,* 88 Cal.App.5th at p. 298.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765; *People v. Garcia* (2024) 101 Cal.App.5th 848, 857 [a trial court's "risk finding" that dismissal of an enhancement would endanger public safety will be upheld " 'if it falls within "the bounds of reason, all of the circumstances being considered" ' "].)

---

[4] Defendant initially argued on appeal that an enhancement that results in a sentence longer than 20 years must be dismissed. (§ 1385, subd. (c)(2)(C) ["The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed"].) On reply, defendant withdrew this argument noting this position was rejected by *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295-297 (*Mendoza*). (See also *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17-21.)

II

*Analysis*

Defendant argues the trial court's finding that striking the prior serious felony enhancement would endanger public safety was an abuse of discretion.[5] We disagree.

In determining whether dismissal of an enhancement would endanger public safety, the trial court should assess the current and future dangerousness of the defendant, including considering when the defendant would be released from prison. (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228.) Section 1385, subdivision (c)(2), however, "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*Mendoza, supra*, 88 Cal.App.5th at p. 299.)

In refusing to strike the prior serious felony enhancement, defendant argues the trial court principally relied on the incident in 2021 wherein he punched an inmate. He also acknowledges that in May 2017, he was found standing over an inmate bleeding from the face, and also had been cited for throwing food, spitting, and refusing a cellmate. He notes that the court and the prosecutor acknowledged that he had no rule violations from 2021 to the date of the December 2023 hearing, and that the court commended defendant on his progress. He concludes his "various reported rule

---

[5] Defendant contends the trial court's finding must be supported by substantial evidence that would support a finding by clear and convincing evidence and our review must consider this heightened standard. The plain language of section 1172.75 provides: "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (*Id.*, at subd. (d)(1).) In accordance with this section, the trial court resentenced defendant to a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancements. Thus, the clear and convincing standard is inapplicable to this case.

violations along with the improvement noted by the court" are insufficient to support a finding that reducing his sentence would endanger public safety.

Defendant interprets the trial court's explanation of the risk defendant posed to public safety too narrowly. The court found "a number of sustained rule violations for violence upon others, both inmates and staff, as well as failing to comply with regular orders." The court referred to medical records from November 2017 documenting "that even the medical staff indicated [defendant] had been involved in a series of violent acts towards members of staff." The records detailed that in November 2017, a nurse asked defendant if he wanted morning medication, and defendant responded: " 'Fuck you bitch I don't take medications! Get off my door you fat fucking bitch! You have a flat ass! I know you are taking HIV medication. I know you got fucked last night bitch. Once you get your jaw broke bitch you will find out!' " Defendant had previously said: " 'I will fuck you in the ass bitch and you are going to like it!' " The nurse stated she felt her personal safety was threatened as defendant's threats escalated. Given defendant's postconviction conduct, the court found that defendant "does still have issues with violence and still has a criminal mindset."

We cannot say the trial court exercised its discretion " ' " 'in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Mendoza, supra*, 88 Cal.App.5th at p. 298; *People v. Garcia, supra*, 101 Cal.App.5th at p. 857 [" 'in the absence of a clear showing its sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives' "].) We are mindful that, under this standard, the trial court's " ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Defendant suggests the trial court's finding did not consider that he would serve a lengthy prison sentence of more than 17 years even if the court struck the five-year enhancement. But the court did not base its finding on a determination that defendant would endanger public safety if immediately released. (See *People v. Gonzalez, supra*, 103 Cal.App.5th at p. 230 [trial court erred when it considered only whether defendant currently posed a danger to the public in assessing dismissal of firearm enhancement].) The court was well aware that its assessment concerned whether a shorter sentence and concomitant earlier release date for defendant would result if the five-year enhancement were stricken, as shown by the court's observation: "My consideration is whether or not there has been at least recent-enough evidence to suggest to this Court that reducing the sentence would endanger public safety," and given the evidence, "this Court does find that imposing a lesser sentence would endanger public safety." Moreover, it is not irrational or arbitrary to determine that someone who committed a spate of violent crimes in a matter of days and was involved in multiple incidents of violent conduct towards inmates and staff while incarcerated would pose a risk to public safety if released before his 22-year sentence was served. The fact that defendant had no rule violations since assaulting an inmate in 2021 does not undermine the court's decision. Defendant had no rule violations between 2017 and 2021, and then he punched another inmate and knocked him to the ground. A gap between rule violations does not establish that defendant will refrain from similar violent and threatening misconduct in the future. In short, defendant has failed to demonstrate that the trial court's "decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra*, 33 Cal.4th at p. 377.)

We also conclude that the trial court did not abuse its discretion in determining that aggravating factors outweighed mitigating factors such that it was not in the interests of justice to strike the prior serious felony enhancement. Even if the court had not made a finding of danger to public safety, it retained discretion to determine whether other countervailing factors " 'nonetheless neutralize even the great weight of the mitigating

circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1036,[6] quoting *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098.)  Here, the court acknowledged that two mitigating circumstances applied:  an enhancement resulting in a sentence over 20 years (§ 1385, subd. (c)(2)(C)) and the prior conviction was over five years old (§ 1385, subd. (c)(2)(H)).  The court based its decision on defendant's "postconviction behavior that is very aggravating in nature."  That behavior included:  the April 2021 incident where defendant punched another inmate, knocking him to the ground; in March 2021, refusing a direct order to accept a cellmate, shouting "I already told you No!"; in January 2021, also refusing an order to accept a cellmate; in December 2017, throwing food and spitting at staff; in December 2017, spitting on a nurse; in November 2017, cursing a nurse offering him medication and threatening to break her jaw; in October 2017, throwing a food tray striking a staff member; in October 2017, spitting on staff; in October 2017, another incident where defendant spit on staff; in July 2017, another incident where defendant refused to accept a cellmate; in May 2017, another incident where defendant punched an inmate, knocking him to the ground.  In sum, defendant's postconviction conduct included violence towards other inmates and refusing to accept a cellmate, as well as acts of aggression against staff attempting to provide defendant with food and medication.

Considering the totality of circumstances, the trial court found these aggravating factors outweighed mitigating factors.  We conclude the court appropriately considered and weighed the present mitigating factors against the aggravating factors.  (*People v.*

[6]  On reply, defendant concedes that, as respondent argued, our Supreme Court in *People v. Walker, supra*, 16 Cal.5th at p. 1033, held that section 1385, subdivision (c)(2) "does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety."

*Ortiz, supra*, 87 Cal.App.5th at p. 1098.)  Defendant has not established abuse of discretion.

**DISPOSITION**

The judgment is affirmed.

/s/
_____
Duarte, Acting P. J.

We concur:


/s/
_____
Feinberg, J.



/s/
_____
Wiseman, J.*

---

**\*** Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.